John L. SAWYER, Appellant,

v.

Edward J. DERWINSKI, Secretary of Veterans Affairs, Appellee.

No. 90–22.

United States Court of Veterans Appeals.

Argued Oct. 12, 1990.

Decided Jan. 25, 1991.

As Amended Sept. 26, 1991.

Rick Surratt (non-attorney practitioner), with whom Edward R. Heath, St. Petersburg, Fla., was on the brief, for appellant.

Robert Randall Campbell argued the case, and Raoul L. Carroll, Gen. Counsel, Barry M. Tapp, Asst. Gen. Counsel, Pamela L. Wood, Deputy Asst. Gen. Counsel, and Craig M. Kabatchnick, Washington, D.C., were on the brief, for appellee.

Before NEBEKER, Chief Judge, and IVERS and STEINBERG, Associate Judges.

IVERS, Associate Judge:

Appellant, John L. Sawyer, has noted an appeal from the Board of Veterans' Appeals' (BVA) denial of his claim for service connection for lung cancer. We find that the BVA erred in its decision in this case and, therefore, remand the case to the BVA for reconsideration pursuant to this opinion.

Appellant was in active service in the Armed Forces from March 26, 1951, to January 6, 1966. For approximately sixteen days, from May 15, 1953, to May 30, 1953, he was assigned temporary duty to attend Exercise Desert Rock Shot V-10, known as "Grable." This was the tenth in a series of above-ground nuclear tests, known as "Operation UPSHOT-KNOTHOLE", which took place in Nevada. Appellant was a member of an observer group called BCT Baker, which was situated an estimated five thousand yards from ground zero. Three seconds after the blast, he and his group were allowed to rise and observe the fireball. They were then ordered to walk through the "display area" which was located within five hundred yards of ground zero and observe the effects of the blast on objects placed there by the testers. This lasted for approximately 40 minutes after the blast.

On August 25, 1976, appellant was admitted to St. Francis Hospital in Wilmington, Delaware and was diagnosed as having a large tumor mass in his right lung. On September 2, 1976, appellant underwent a right upper lobectomy. The pathology report revealed a diagnosis of anaplastic bronchogenic carcinoma (epidermoid type). On March 23, 1977, appellant filed a claim for disability benefits with the Veterans' Administration (now the Department of Veterans Affairs) (VA) claiming service connection for his lung cancer. The Wilmington, Delaware, Veterans Administration Regional Office (Regional Office) denied appellant's claim on the grounds that his lung cancer was not service-connected. On appeal to the BVA, the case was remanded to the Regional Office to gather more information on appellant's medical records and his participation in the atomic bomb testing. On August 11, 1980, appellant's claim was again denied by the Regional Office. The claim was rejected on the grounds that appellant's exposure to radiation was brief, that he witnessed only one nuclear test, and that his dosage was small, estimated at 4.4 rem. According to the VA, 4.4 rem was "within the present national occupational radiation exposure standard which permit[s] 5.0 rem per calendar year." R. at 250. The Board, in upholding the denial, also relied on the fact that appellant had smoked approximately a pack of cigarettes a day for some thirty-odd years. The BVA decision was issued on June 8, 1981.

The Veterans' Dioxin and Radiation Exposure Compensation Standards Act, Pub.L. No. 98–542, 98 Stat. 2725 (pertinent provisions of which are codified at 38 U.S.C. § 354(a) (1988)), was enacted on October 24, 1984. That statute required the Secretary of Veterans Affairs to prescribe regulations for determining whether veterans were entitled to service connection for certain disabilities if they were exposed to dioxin in the Republic of Vietnam or to radiation from nuclear detonations while on active duty. The purpose of the statute was:

> to ensure that Veterans' Administration disability compensation is provided to veterans who were exposed during service in the Armed Forces in the Republic of Vietnam to a herbicide containing dioxin or to *ionizing radiation in connection with atmospheric nuclear tests* or in connection with the American occupation of Hiroshima or Nagasaki, Japan, for *all* disabilities arising after that service that are connected, based on sound scientific and medical evidence, to such service (and that Veterans' Administration dependency and indemnity compensation is provided to survivors of those veterans for *all* deaths resulting from such disabilities).

Pub.L. No. 98–542, § 3, 98 Stat. 2725, 2727 (1984) (emphasis added).

Pursuant to Pub.L. No. 98–542 and 38 U.S.C. § 354(a) (1988), the VA promulgated 38 C.F.R. § 3.311b (1989) which identified a

group of diseases as "radiogenic diseases" and set forth guidelines to be followed when determining whether to award disability to veterans who were exposed to radiation during service, and their survivors.

On June 10, 1986, appellant petitioned the Regional Office to reopen his claim based solely on the enactment of Pub.L. No. 98–542. Appellant offered no new and material evidence. The Regional Office, after reopening appellant's claim, denied his claim, stating in the Statement of the Case, "he did not receive radiation dosages to warrant establishment of service connection for lung cancer based on criteria established by 38 C.F.R. § 3.311b." R. at 823. However, on December 15, 1989, the BVA, in upholding the denial, ruled that "[t]he Board of Veterans' Appeals decision of June 1981, denying service connection for lung cancer is final, and a new factual basis warranting the grant of service connection for lung cancer has not been presented." *John L. Sawyer*, loc. no. 936226, at 7 (BVA Dec. 15, 1989). The BVA based its conclusion on 38 U.S.C. § 4004(b) (1988) and 38 U.S.C. § 3008 (1988); both govern the reopening of disallowed claims. Appellant filed a timely Notice of Appeal with the Court.

Appellant contends that 38 C.F.R. § 3.311b (1989) requires the Regional Office, and, subsequently, the BVA, in reviewing the Regional Office decision, to afford a *de novo* review to his claim. We agree.

■ The Court has jurisdiction to hear this appeal pursuant to 38 U.S.C. § 4052 (1988). In applying 38 C.F.R. § 3.311b (1989) to a veteran's case, the spirit as well as the letter of Pub.L. No. 98–542 must be taken into account. That law was enacted to address a growing concern among veterans that many of their disabilities were caused by exposure to radiation and that there were no standards available to fairly and accurately adjudicate claims. *See* Veterans' Dioxin and Radiation Exposure Compensation Standards Act, Pub.L. No. 98–542, §§ 2(1), (10), (11), (12), and 5(a), 98 Stat. 2725, 2725–2727 (1984). Realizing

that many veterans were not being granted benefits because of a lack of uniformity in decisions by the VA on radiation cases, Congress passed 38 U.S.C. § 354(a) (1988), which states:

> The [Secretary] shall include in the regulations pertaining to service-connection of disabilities (1) additional provisions in effect requiring that in *each* case where a veteran is seeking service-connection for *any* disability due consideration shall be given to the *places, types, and circumstances of such veteran's service as shown by such veteran's service record, the official history of each organization in which such veteran served, such veteran's medical records, and all pertinent medical and lay evidence,* and (2) the provisions required by section 5 of the Veterans' Dioxin and Radiation Exposure Compensation Standards Act.

(emphasis added). From the language of the statute, we hold that Congress intended the VA to examine a veteran's entire record when determining whether benefits are to be awarded.

In circumstances involving a reopened claim that was previously denied, it is imperative that the veteran's claim is examined thoroughly in light of the language of the new regulations. To implement 38 U.S.C. § 354(a) (1988), the VA promulgated 38 C.F.R. § 3.311b (1989), setting forth a list of requirements and steps the VA must follow in order to determine if a veteran's disability, based on radiation exposure, is service-connected. Examination of the record suggests that some attempt was made to follow the proper steps under 38 C.F.R. § 3.311b (1989); however, it is not clear from the VA's rating decision or the Statement of the Case that the Regional Office did conduct *de novo* review of appellant's entire record. We find that, based on the record, the BVA did not conduct the required *de novo* review of appellant's claim.

Legislative history of Pub.L. No. 98–542 shows that Congress not only had in mind those veterans who had not yet filed claims with the VA but those who had filed claims and were denied service connection. Dur-

ing debate over the legislation that became Pub.L. No. 98–542, the Chairman of the Senate Veterans Affairs Committee stated:

> Of the 1,646 claims related to exposure through participation in the nuclear testing program, a total of only 30 have been granted; 14 of these were granted at the regional level and 16 were granted at the Board of Veterans Appeals. I want to stress that 945—or 57 percent—of these nuclear-test related claims were for malignancies—solid tumors or cancer, as we nonmedical people would say—and for leukemias, and lymphomas. These are not frivolous claims. These are claims for benefits as a result of exposure to a hazard as to which medical science generally agrees that no level of exposure can be considered safe.

130 Cong.Rec. S6147 (daily ed. May 22, 1984).

■ We hold that Congress intended that those who had previously been denied claims could come forward and have their claims reevaluated under the new guidelines. Applying 38 U.S.C. § 4004(b) (1988) and 38 U.S.C. § 3008 (1988), in the manner in which appellee proposes, to claims such as appellant's would render Pub.L. No. 98–542 a nullity. 38 U.S.C. § 4004(b) (1988) states that "except as provided in section 3008 of this title, when a claim is disallowed by the Board, the claim may not thereafter be reopened and allowed and a claim based upon the same factual basis may not be considered." 38 U.S.C. § 3008 (1988) requires new and material evidence to be presented before a disallowed claim will be reopened. We conclude that, applying 38 U.S.C. §§ 4004(b) and 3008 (1988), as the BVA did in the present case, would not lead to the results Congress intended when it enacted Pub.L. No. 98–542. Therefore, the Court holds that 38 C.F.R. § 3.311b (1989) applies not just to claims that have never before been adjudicated, but to *all* claims involving disabilities possibly caused by exposure to radiation.

■ Appellee conceded in oral argument that appellant was entitled to a *de novo* review by the BVA and asserted that

one was provided. However, the record does not offer any evidence to support appellee's claim. The Court agrees with appellee that appellant is entitled to *de novo* review. We find it virtually impossible for the VA to render a decision under 38 C.F.R. § 3.311b (1989) without taking into consideration all of the evidence of record, new as well as old, when making a decision. The Regional Office must follow the guidelines listed in the Code of Federal Regulations. It has a duty to ensure that all of the relevant sections are fairly and impartially applied to each veteran's claim in order to ensure that the veteran's claim receives full and evenhanded consideration. The BVA, in reviewing the decisions of the Regional Office, must apply the appropriate regulations and, if the veteran is not entitled to benefits under those regulations, must give reasons or bases explaining why. *See Gilbert v. Derwinski*, 1 Vet. App. 49 (1990).

■ In reviewing the Board's decision of December 15, 1989, the Court notes that, at pages six and seven of its decision, the Board appears to have applied an inappropriate standard, an absence of "probability", in arriving at its determination. After a claim is forwarded for review by the Chief Benefits Director, the Chief Benefits Director must do one of three things: 1) determine that it "is at least as likely as not the veteran's disease resulted from exposure to radiation in service," 38 C.F.R. § 3.311b(c)(1)(i); 2) determine that "there is no reasonable possibility that the veteran's disease resulted from radiation exposure in service," 38 C.F.R. § 3.311b(c)(1)(ii); or 3) if the Chief Benefits Director requests an advisory medical opinion from the Chief Medical Director and, after considering that opinion, "is unable to conclude whether it is at least as likely as not, or that there is no reasonable possibility, the veteran's disease resulted from radiation exposure in service, the Chief Benefits Director shall refer the matter to an outside consultant." 38 C.F.R. § 3.311b(c)(2). Appellee, in his supplemental memorandum, asks the Court to treat an absence of "probability", which the BVA uses in its decision as a

standard identical to "no reasonable possibility." The Court holds that the BVA, in reviewing the Regional Office denial of the claim, must use the same standard for its decision as that which governed the Regional Office's determination—the standard set forth in 38 C.F.R. § 3.311b(c)(1) and (2). The Court further holds that an absence of "probability" is a higher standard than "no reasonable possibility".

According to Black's Law Dictionary 1201 (6th ed. 1990), "probability" means the "likelihood; appearance of reality or truth; reasonable ground of presumption; verisimilitude; consonance to reason." Thus, an absence of "probability" would mean "[t]he [un]likelihood of a proposition or hypothesis being true, from its conformity to reason or experience, or from superior evidence or arguments adduced in its favor." *Id.* at 1201. The definition further states that "there is more evidence [not] in favor of the existence of a given proposition than there is [for] it." *Id.* Webster's New World Dictionary 1118 (3d ed.1988) defines "reasonable" as "able to reason" or "just using or showing reason, or sound judgment; sensible." Black's Law Dictionary 1166 (6th ed.1990) defines "possible" as "capable of existing, happening, being, becoming or coming to pass; feasible, not contrary to the nature of things; neither necessitated nor precluded; free to happen or not; contrasted with impossible. [The] word denotes improbability, without excluding the idea of feasibility," thereby differentiating the term from probability. *Id.* Examination of 38 C.F.R. § 3.102 (1989), shows that the VA recognizes a difference between the words "probability" and "possibility":

> By reasonable doubt is meant one which exists because of an approximate balance of positive and negative evidence which does not satisfactorily prove or disprove the claim. It is a substantial doubt and one within the range of *probability* as distinguished from pure speculation or remote *possibility*.

(emphasis added). *Cf. I.N.S. v. Cardoza Fonseca*, 480 U.S. 421, 107 S.Ct. 1207, 94 L.Ed.2d 434 (1987) (holding that the 8 U.S.C. § 1253(h) (1988) "clear probability" standard of proof did not govern asylum applications under 8 U.S.C. § 1158(a) (1988) stated "that so long as an objective situation is established by the evidence, it need not be shown that the situation will probably result in persecution, but it is enough that persecution is a reasonable possibility") (citing with approval, *I.N.S. v. Stevic*, 467 U.S. 407, 424–425, 104 S.Ct. 2489, 2498, 81 L.Ed.2d 321 (1984)); *Garcia–Ramos v. I.N.S.*, 775 F.2d 1370 (9th Cir.1985); *Castaneda–Hernandez v. I.N.S.*, 826 F.2d 1526 (6th Cir.1987); *Evenson v. Osmose Wood Preserving Co. of America*, 899 F.2d 701 (7th Cir.1990) (products liability case holding that a reasonable possibility was a lesser standard than a probability).

Appellant, in his supplemental memorandum, raises the question as to whether his claim falls within the terms specified in Chris L. Gott, 50 Fed.Reg. 45,703 (VA 1985) (Settlement Agreement), which resolved *Gott v. Walters*, 756 F.2d 902 (D.C.Cir.1985), *vacated* 791 F.2d 172 (D.C.Cir.1985). Based on our disposition of this appeal, it is unnecessary to address this issue.

■ Therefore, for the reasons stated herein, we remand the matter and direct the BVA and the VA to comply with the requirement of *de novo* review according to the guidelines in 38 C.F.R. § 3.311b (1989). We will retain jurisdiction and direct that, upon completion of the remand proceeding, whether the Secretary grants or denies appellant's claim, he supplement the record on appeal to include the further action of the Board and the Department. The supplemental record shall be filed with the Court and a copy served upon the appellant.

*It is so Ordered.*

STEINBERG, Associate Judge, concurring.

I concur with the decision and the opinion of the majority remanding this case to the Board of Veterans' Appeals (BVA) and the Department of Veterans Affairs (VA) "to comply with the requirement of *de novo* review according to [Pub.L. No. 98–542, 98

Stat. 2725 (Oct. 24, 1984), and the implementing regulations] ... in 38 C.F.R. § 3.311b (1989)." Majority opn., *ante*, p. 135. However, I am writing separately to address several issues which are, I believe, relevant to this case when it is considered on remand by the BVA but which were not addressed in the majority opinion. These issues are: the applicability and relevance of the settlement agreement (published at 50 Fed.Reg. 45,703 (1985)) in *Gott v. Walters*, 756 F.2d 902 (D.C.Cir.1985), *vacated* 791 F.2d 172 (D.C.Cir.1985); certain matters which appellant raised here for the first time; and the relevance of 38 C.F.R. § 3.311b(a)(3) and (e)(1) (1989).

### *Gott* Settlement Agreement

The *Gott* settlement agreement is relevant to this appeal for two reasons: (1) If the agreement is applicable to Mr. Sawyer's claim, then, if his claim is allowed after further review, the terms of the agreement would make him eligible for retroactive benefits from the date he originally filed his claim; and (2) the agreement provides clear contemporaneous evidence of VA's interpretation of Pub.L. No. 98–542 as requiring *de novo* review of claims made under that law.

Under the *Gott* settlement agreement, those who had filed claims for compensation based on exposure to nuclear-weapons-test ionizing radiation that "were denied by the VA by rating decision dated on or after June 15, 1979, and on or before November 17, 1981" were to be provided notice that they may be eligible for retroactive benefits if their claims were allowed after review under the implementing regulations (now codified at 38 C.F.R. § 3.311b (1989)) issued on September 25, 1985, pursuant to Pub.L. No. 98–542, to govern compensation claims based on exposure to nuclear-blast radiation. (*Gott* Settlement Agreement at paragraph 2, 50 Fed.Reg. 45,704 (1985)). For a claim to be considered under the settlement agreement, a claimant was required to file the claim within one year after the effective date of the implementing regulations, *i.e.*, by September 25, 1986. *Id.* at paragraph 3.

In a November 12, 1985, letter from VA's Chief Benefits Director to VA regional offices providing guidance on the construction and implementation of the agreement, paragraph 4 states in pertinent part:

Eligibility under this special review exists, under terms of the settlement agreement, only if the claimant filed a radiation-related claim which was denied by "rating decision" dated on or after June 15, 1979, and on or before November 17, 1981. "Rating decision" shall be construed liberally to include cases in which earlier dated, radiation-related, rating denials were appealed, provided the "Notice of Disagreement" was filed between the same dates, and only if the appeal was subsequently heard and denied or still is in pending status. (Note: Claims involving "confirmed or continued" prior denial ratings are included in this review, provided the "C & C" rating occurred during the appropriate period.)

Letter, from Veterans' Administration's Chief Benefits Director to Regional Offices, Appended to Appellee's Reply Memorandum (Nov. 13, 1990).

The appellant's claim was initially denied by rating decision on October 3, 1977, prior to the beginning of the period covered by the settlement agreement. R. at 138. The appellant's Notice of Disagreement was filed on June 23, 1978, also prior to that period. R. at 149. However, a confirmed rating decision was issued within that period on August 11, 1980. R. at 249.

Either the parenthetical in the letter quoted above applies only to the last sentence of paragraph 4, in which case the appellant would not be eligible for review under the settlement agreement because his Notice of Disagreement was not filed within the specified period, or the parenthetical applies to both sentences of the paragraph. The latter interpretation is the more reasonable one both in terms of achieving a sensible result and of the words used. The words of reference in the parenthetical—"in this review"—are not used at all in the second sentence but do have an antecedent—"special review"—in the first sentence. Moreover, it seems in-

apposite to adopt the more restrictive construction when construing a remedial document. A more expansive construction assures that all claimants who were intended to benefit from the settlement agreement are covered.

Under this construction, review under the *Gott* settlement agreement would apply to a claim having a confirmed rating decision dated on or after June 15, 1979, and on or before November 17, 1981, regardless of when the Notice of Disagreement was filed. The *Gott* "special review" would apply to the appellant's claim because he received a confirmed rating decision within the period covered by the settlement agreement. Under the more narrow interpretation, a claim denied by rating decision prior to the eligibility period but with a Notice of Disagreement filed within that period would be denied "special review" if a confirmed rating involving the claim had been issued after that period. Such a result would be contrary to VA's statement that the term "rating decision" was to be "construed liberally" to include cases with a Notice of Disagreement filed within the eligibility period. Letter, *supra* at 10.

The appellant was not included in the list of claimants notified by VA of the opportunity for review under the settlement agreement, but he did notify VA on June 10, 1986, that he wanted his previous denial reconsidered as a result of the enactment of Pub.L. No. 98–542. R. at 292. As stated above, for a claim to be considered under the terms of the settlement agreement it had to be filed by September 25, 1986. The appellant filed before the agreement deadline date. Although he did not specify that he wanted his claim reviewed under the terms of the settlement agreement, the agreement did not require claimants to so specify when filing their claims.

A conclusion that the appellant meets the eligibility requirements of the settlement agreement is significant because the agreement provided for the award of retroactive benefits for allowed claims. The settlement agreement provides that "VA shall establish the effective date for award of benefits as if the allowed claim had been filed on the date of filing of the earliest claim denied within the said period [from June 15, 1979, through November 17, 1981]." *Gott* Settlement Agreement at paragraph 3, 50 Fed.Reg. 45,704 (1985).

The appellant first filed a claim on March 23, 1977, for benefits based on exposure to ionizing radiation. R. at 114. His claim was denied by a confirmed rating decision within the "said period". R. at 249. Under the terms of the agreement, if the appellant's claim were allowed after review under 38 C.F.R. § 3.311b, then the effective date for the award of benefits would be March 23, 1977. Otherwise, the award would be retroactive to no earlier than June 11, 1985.[1]

In any case, VA's interpretation of the settlement agreement buttresses our conclusion that Pub.L. No. 98–542 requires *de novo* review of claims made under that law. It is clear from the settlement agreement that VA early on did not interpret that public law and the "new and material" provisions in 38 U.S.C. § 4004(b) and 38 C.F.R. § 19.194 (the predecessors to 38 U.S.C. § 3008 (1988)) as requiring the submission of "new and material" evidence in order to move to "reopen" the claim under Pub.L. No. 98–542.

This is evident from the form letter sent to claimants affected by the *Gott* settlement agreement which states that the claimant "*may* ... supplement [the] claim by including any additional information not

---

1. If the appellant's claim were reviewed and allowed by VA pursuant to the enactment of Pub.L. No. 98–542 but not under the settlement agreement, the effective date of the award of benefits would be determined by 38 U.S.C. § 3010(g) (1988) and 38 C.F.R. § 3.114a (1989). Section 3.114a(3) provides: "If a claim is reviewed at the request of the claimant more than 1 year after the effective date of the law, ... the benefits may be authorized for a period of 1 year prior to the date of receipt of such request." The effective date of Pub.L. No. 98–542 was October 24, 1984, and appellant's request for review was received on June 11, 1986. Therefore, the effective date for an award of benefits to the appellant could be no earlier than June 11, 1985, more than eight years later than the effective date were the appellant's claim to come under the settlement agreement.

previously given to the VA". Letter, from Veterans' Administration to Claimants, Appended to Appellee's Supplemental Memorandum (Oct. 26, 1990) (discussing the reopening of previously denied claims involving exposure to ionizing radiation) (emphasis added). Also, the Chief Benefits Director's letter states that "the claim solicitation letters [the form letters referred to above] do *not* intend that claimants submit any additional evidence for this review." Letter, *supra* at 10 (emphasis added).

Section 4004(b) as then in effect provided, in much the same terms as sections 3008 and 4004(b) do now, that "when a claim is disallowed by the Board, it may not thereafter be reopened and allowed[;] ... however, where subsequent to disallowance of a claim, new and material evidence ... is secured, the Board may authorize the reopening of the claim and review the former decision." 38 U.S.C. § 4004(b) (1982). Hence, VA would have no authority to reopen a claim under the *Gott* settlement agreement unless Pub.L. No. 98–542 were (correctly) construed as having provided an independent basis for such reopening without the submission of new and material evidence by the claimant as otherwise would have been required under section 4004(b) as then in effect.

### New Evidence and Argument in Connection with Remand

In presenting oral argument to this Court, the appellant's representative referred for the first time to the National Academy of Sciences' report entitled *Health Effects of Exposure to Low Levels of Ionizing Radiation, BEIR V,* National Academy Press, Washington, DC (1990). The report may be relevant in showing that "the risk of increased cancer associated with exposure may occur at lower exposure rates than previously believed." Br. of Appellant at 19. Such a showing would affect the interpretation of the radiation dose reconstruction estimate (a maximum exposure of 4.4 rem) attributed to the appellant as a result of his activities related to nuclear testing. *John L. Sawyer,* loc. no. 936226, at 3 (BVA Dec. 15, 1989). That dose estimate was relied upon by the BVA in determining that appellant's lung cancer was not due to his exposure to radiation during service. *Id.* at 6.

Also at oral argument, the appellant's representative raised for the first time an argument that, in determining whether the appellant's lung cancer is service-connected, the 14 years of smoking in service should be considered along with the in-service radiation exposure. Under such an approach, the only evidence against service connection would be the 10 years of smoking after discharge until the lung-cancer diagnosis was made. The VA regulations provide that service connection must be denied in such a situation if "a supervening nonservice-related condition ... is more likely the cause of the disease" than the in-service activity. 38 C.F.R. § 3.311b(g) (1989).

The appellant may be able to introduce on remand both or either of these arguments and evidence in support of them, since a remand is inherently equivalent to a reconsideration, except that upon remand the panel is not expanded, as it is, under 38 U.S.C. § 4003(b) (1988), if reconsideration is ordered. *See* 38 C.F.R. §§ 19.185 and 19.-187 (1989).

### Application of 38 C.F.R. § 3.311b(a) and (e)

Two regulatory provisions seem particularly pertinent to further consideration of this case on remand. First, if the appellant submits his own dose estimate under 38 C.F.R. § 3.311b(a)(3) (1989) and if it differs materially from the 4.4–rem dose estimate, then all the records, estimates, and supporting documentation are, under that section, required to be referred to the Director of the National Institutes of Health for the preparation of a separate dose estimate.

Second, 38 C.F.R. § 3.311b(e)(1) (1989) provides:

> Factors to be considered in determining whether a veteran's disease resulted from exposure to ionizing radiation in service include: (1) The probable dose, in terms of type, rate and duration as a factor in inducing the disease, *taking into account any known limitations in the dosimetry devices employed in its*

measurement or *the methodologies employed in its estimation....*

(Emphasis added.) In its review on remand of the appellant's claim under the applicable regulations, the BVA will thus be required to take into account, in utilizing the reconstructed 4.4–rem dose estimate, any limitations in the methodologies employed in arriving at that reconstructed estimate.