Charles M. **DOUGLAS**, Appellant,

v.

Edward J. **DERWINSKI**, Secretary of Veterans Affairs, Appellee.

No. 90–678.

United States Court of Veterans Appeals.

Submitted Feb. 21, 1992.

Decided May 21, 1992.

Joseph A. Violante, Washington, D.C., was on the brief, for appellant.

James A. Endicott, Jr., General Counsel, David T. Landers, Acting Asst. General Counsel, R. Randall Campbell, Deputy Asst. General Counsel, and Carolyn F. Washington, Washington, D.C., were on the motion, for appellee.

Before NEBEKER, Chief Judge, and KRAMER, FARLEY, MANKIN, HOLDAWAY, IVERS and STEINBERG, Associate Judges.

STEINBERG, Associate Judge, filed the opinion of the Court.

STEINBERG, Associate Judge:

Because this opinion overrules a portion of *Sawyer v. Derwinski*, 1 Vet.App. 130, 135 (1991), this case has been presented to the full Court for en banc consideration. *See Bethea v. Derwinski*, 2 Vet.App. 252, 254, (1992) ("only the en banc Court may overturn a panel decision").

In an earlier opinion in this case, dated January 24, 1992, the Court vacated the decision of the Board of Veterans' Appeals (BVA or Board) and remanded the record for readjudication. *Douglas v. Derwinski*, 2 Vet.App. 103 (1992) (hereafter referred to

as *Douglas I*). On February 21, 1992, the Secretary of Veterans Affairs (Secretary) filed a motion for reconsideration or, in the alternative, en banc review. The Secretary makes the following primary arguments: (1) the BVA was not required to consider, under 38 C.F.R. § 3.303(a) (1991), the issue of direct service connection for appellant's basal-cell carcinoma; (2) 38 C.F.R. § 3.103(c)(2) (1991), governing hearing rights, does not apply to the Board in its conduct of hearings; (3) 38 U.S.C. § 7722(c) (previously contained in § 241(2)) does not apply generally to the BVA; and (4) in the evaluation of claims based on exposure to ionizing radiation, the BVA is not required to apply the standard of review set forth in 38 C.F.R. § 3.311b(c)(1)(ii) (1991), but, rather, is required to apply the more traditional standard set forth in paragraph (f) of the regulation. Appellee's Motion for Reconsideration (Mot. for Recons.).

For the reasons set forth below, the en banc Court will grant the Secretary's motion for review, and reaffirm all parts of the January 24, 1992, opinion with the exception of the part relating to the Secretary's fourth contention above, and vacate that portion of *Douglas I*, specifically, part II.E., 2 Vet.App. at 110–11. The Secretary's motion for panel reconsideration will be denied as moot. On May 4, 1992, the Court received from the Secretary notice of action taken by the BVA in this case to comply with the Court's January 24, 1992, opinion. *See Douglas I*, 2 Vet.App. 103. The BVA had issued a decision on April 8, 1992, remanding the record to the originating agency for the submission of additional evidence on the issue of direct service connection for basal-cell carcinoma and actinic keratosis, for the conduct of a thorough medical examination, and for adjudication of the issue of direct service connection for skin diseases resulting from in-service exposure to the sun. Since the Court will affirm all parts of *Douglas I* that relate to the Board's remand order, its instructions to the originating agency are not in conflict with this opinion.

We will summarize the facts previously before the Court and the Court's conclu-

sions in *Douglas I,* and will then address the Secretary's objections to those conclusions.

## I.

The appellant appealed to the Court the BVA's March 23, 1990, denial of his claim for service connection for basal-cell carcinoma of the neck. *Charles M. Douglas,* BVA 89–03499 (Mar. 23, 1990). He claimed that the carcinoma resulted from his exposure at the close of World War II to ionizing radiation from the atomic bomb site at Hiroshima. *Ibid.*

Medical evidence submitted by the veteran to the Department of Veterans Affairs (VA or Department) suggested that his basal-cell carcinoma may have resulted directly from excessive exposure to the sun during his tenure as a deckhand in the Navy, and the veteran's representative thrice raised this alternative ground at a hearing before the BVA. *Douglas I,* 2 Vet.App. at 106–07. However, the BVA made no findings with regard to this contention, addressing only whether exposure to ionizing radiation could have caused the veteran's illness. Regarding the possibility of direct service connection, the Court found the BVA's decision defective for failing (1) to consider the entire evidence pursuant to 38 U.S.C. § 7104(a) (formerly § 4004) and 38 C.F.R. § 3.303(a); (2) to provide adequate reasons or bases, pursuant to 38 U.S.C. § 7104(d)(1), for its findings; (3) to fulfill its statutory duty to assist, under 38 U.S.C. § 5107(a) (formerly § 3007), and its related obligations under 38 U.S.C. § 7722(c); and (4) to adhere to 38 C.F.R. § 3.103(c)(2). In addition, the Court held that the BVA's decision was defective because the Board did not apply to the radiation claim the standard of review set forth in 38 C.F.R. § 3.311b(c)(1)(ii).

## II.

A. Consideration of the Entire Evidence

■ In its earlier opinion, the Court held that the BVA had failed to adhere to 38 U.S.C. § 7104(a) and 38 C.F.R. § 3.303(a), which require that the Board consider the entire evidence of record in making its decisions. The Court enumerated several references in the record to the veteran's fair skin, substantial exposure to the sun during service, and resulting medical problems, which implied a claim under 38 U.S.C. § 1110 (formerly § 310) and 38 C.F.R. § 3.303(a), for direct service connection for basal-cell carcinoma arising from sun exposure. *Douglas I,* 2 Vet.App. at 107. Moreover, the Court pointed out the three times that the veteran's representative at the BVA hearing had urged consideration of the theory of direct service connection based on sun exposure. *Id.* at 106. Evidence supporting the viability of this theory was before the BVA but was either not considered by it, or, in the alternative, considered but not addressed in its decision.

The Secretary now argues that neither the case law nor the regulations "compel[ ]" the Court's holding. Mot. for Recons. at 4. He further argues that, under 38 C.F.R. § 19.123 (1991), the Board is required to address only issues raised in the VA Form 1–9 (substantive appeal to the BVA) or those which may be reasonably construed from that document. *Ibid.* We disagree with the Secretary and conclude that the statute, regulations, and case law clearly support the Court's holding that the Board was required to consider all the evidence and that it failed to do so here.

Section 7104(a) of title 38, United States Code, requires in pertinent part:

Decisions of the Board shall be based on the *entire record in the proceeding* and upon *consideration of all evidence and material of record and applicable provisions of law and regulation.*

(Emphasis added.) Section 3.303(a) of VA's regulations similarly requires that "[d]eterminations as to service connection *will be based on review of the entire evidence of record".* 38 C.F.R. § 3.303(a) (1991) (emphasis added).

■ When the Court "find[s] the terms of a statute unambiguous, judicial inquiry is complete except in rare and exceptional circumstances", as where "application of the statute as written will produce a result 'demonstrably at odds with the intentions

of its drafters' ". *Demarest v. Manspeaker*, 498 U.S. 184, 111 S.Ct. 599, 604, 112 L.Ed.2d 608 (1991) (quoting *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 571, 102 S.Ct. 3245, 3250, 73 L.Ed.2d 973 (1982)); *see Thompson/Center Arms Co., A Div. of the K.W. Thompson Tool Co. v. United States*, 924 F.2d 1041, 1044 (Fed. Cir.1991) ("[o]nly very clear evidence of contrary legislative intent can displace the plain meaning of a statute"). Review of the legislative history reveals no intention by Congress to limit the BVA's consideration of evidence to only that evidence supporting a legal issue expressly raised in the Form 1–9 substantive appeal. Similarly, nowhere do the statutory provisions relating to the claimant's filing a "formal appeal" in order to perfect an appeal to the BVA (initiated by the filing of a Notice of Disagreement with a regional office decision, followed by a Statement of the Case by a regional office) provide that only legal issues raised in the formal appeal, and evidence pertinent to those issues, must be considered by the Board. *See* 38 U.S.C. § 7105(d)(3), (4), (5) (formerly § 4005). We have been presented with no evidence more persuasive of the meaning of 38 U.S.C. § 7104(a) " 'than the words by which the legislature undertook to give expression to its wishes.' " *Griffin*, 458 U.S. at 571, 102 S.Ct. at 3250 (quoting *United States v. American Trucking Assns., Inc.*, 310 U.S. 534, 543, 60 S.Ct. 1059, 1063, 84 L.Ed. 1345 (1940)). Thus, if the evidence of record supports entitlement to disability compensation under a statutory provision or regulation not raised or argued in the Form 1–9 appeal, the BVA may not decline to consider it.

The Secretary seeks to bypass the plain meaning of the above statutory and regulatory provisions as well as the applicable precedents of this Court, arguing that 38 C.F.R. § 19.123 (*see* 57 Fed.Reg. 4,112 (1992) (to be codified at 38 C.F.R. § 20.202)) limits the review by the BVA to the four corners of the Form 1–9 substantive appeal. Mot. for Recons. at 3–4. However, this interpretation of the regulation fails to accord with the language of the regulation itself, which, as reformulated, states that claimants "should" set forth in their substantive appeals to the BVA the "specific arguments relating to errors of fact or law". "[A]rguments" made will be construed liberally to determine whether they raise cognizable issues. 57 Fed.Reg. 4,112 (1992). Nowhere does the regulation state that only the issues raised in the Form 1–9 appeal must be considered; nor does the regulation state that the BVA must consider only the evidence pertinent to the issues raised explicitly in the Form 1–9 appeal. Moreover, a contrary interpretation of the regulation would conflict with the mandates of 38 U.S.C. § 7104(a) and 38 C.F.R. § 3.303(a), discussed above, requiring that the BVA consider all the evidence of record.

Furthermore, the Secretary's interpretation of the actions the BVA must undertake in evaluating appeals is also contrary to a basic principle of the VA claims process that claims will be processed and adjudicated in an informal, nonadversarial atmosphere, and that to ensure a just outcome under this rubric VA will assist claimants in many ways. *See Littke v. Derwinski*, 1 Vet.App. 90, 91–92 (1990). This principle has been codified in many statutory provisions requiring VA to take a variety of steps to aid veterans in the development, presentation, and consideration of their claims. *See* 38 U.S.C. §§ 5106 (formerly § 3006), 5107(a), (b), 5109 (formerly § 3009), 7722(c), (d). Only if all the evidence of record is considered by the BVA may these obligations properly be fulfilled, as exemplified in *EF v. Derwinski*, 1 Vet. App. 324, 326 (1991). There, the Court stated that, although the arguments made in a Form 1–9 appeal to the BVA often frame the nature of that appeal: "there is nothing magical about the statements actually on the 1–9 form, given the VA's nonadversarial process. The VA's statutory 'duty to assist' must extend this liberal reading to include issues raised in *all documents or oral testimony submitted prior to the BVA decision*." *Id.* at 326 (emphasis added).

For the reasons above, the BVA's failure to adhere to 38 U.S.C. § 7104(a) and

38 C.F.R. § 3.303(a) by "acknowledg[ing] and act[ing] upon relevant assertions and issues which the record clearly shows" was, under 38 U.S.C. § 7261(a)(3)(A), "not in accordance with law", requiring the Court to set aside the Board's decision. *Payne v. Derwinski*, 1 Vet.App. 85, 87 (1990). In *Payne*, the Court remanded the case to the BVA to consider the applicability of 38 C.F.R. § 3.310(a) (1991), governing entitlement to service connection for secondary conditions, since evidence in the record before the Board had suggested that a right-knee disability had arisen from a service-connected left-knee disability, and the BVA had not considered, or, at least, acknowledged, the right-knee evidence supporting consideration of that regulation. *Id.* at 87. In *Schafrath v. Derwinski*, 1 Vet.App. 589, 592–93 (1991), the Court held that the BVA's failure to acknowledge or consider 38 C.F.R. § 4.40 (1991), governing application of a compensable rating due to pain, which was "made potentially applicable through assertions and issues raised in the record", was unlawful where the BVA did not acknowledge or consider the regulation, even though it was never mentioned by the claimant.

Similarly, in the instant case, the appellant presented sufficient evidence to require consideration and discussion of the application of 38 U.S.C. § 1110 and 38 C.F.R. § 3.303(a) (as it concerns entitlement to direct service connection) to the evidence supporting direct service connection for basal-cell carcinoma based on sun exposure during service. Moreover, his representative even raised, explicitly, at his hearing the theory of sun exposure as the cause of his basal-cell carcinoma. *Douglas I*, 2 Vet.App. at 106. *EF, Payne*, and *Schafrath* have established that the Board is not free to ignore an applicable regulation and the evidence supporting its application despite an appellant's failure to raise explicitly in his substantive, formal appeal the applicability of the regulation and the evidence pertinent to it. *See also Schaper v. Derwinski*, 1 Vet.App. 430, 434 (1991) (quoting *Smith v. Derwinski*, 1 Vet.App. 267 (1991)) (in remanding to BVA for, inter alia, failure to make determination on ap-

pellant's challenge as to validity of asserted debt, court stated that " '[i]n reviewing a benefits decision, the Board must consider the entire record, all of the evidence, and all of the applicable laws and regulations' "); *Peyton v. Derwinski*, 1 Vet.App. 282, 286–87 (1991) (instructing Board on remand to consider potentially applicable regulations which it failed to cite or discuss). Consequently, we reaffirm that the Board's failure to consider and discuss specifically all of the evidence before it and the legal issue raised thereby was prejudicial error warranting a remand in this case. *See* 38 U.S.C. § 7261(a)(3)(A).

B. Application of 38 C.F.R. § 3.103(c)(2)

The Court's previous conclusions regarding the applicability of 38 C.F.R. § 3.103(c)(2) (1991) are also not overcome by the Secretary's arguments. *See* Mot. for Recons. at 4–7. We continue to maintain that, under 38 U.S.C. § 7104(c) and 38 C.F.R. § 19.103 (1991), the Board is required to adhere to "the regulations" of the Department. *Douglas I*, 2 Vet.App. at 110. Neither the statutory provision nor the implementing regulation delineate particular regulations, such as 38 C.F.R. § 3.103(c)(2), with which the Board need not comply. *See Demarest*, 111 S.Ct. at 604 (most persuasive evidence of purpose of statute is words chosen by legislature to express its wishes). Moreover, as pointed out in *Douglas I*, the applicability of chapter 3 of title 38 of the Code of Federal Regulations to the BVA is demonstrated in chapter 19. Entitled "BOARD OF VETERANS APPEALS", chapter 19 specifically cross-references section 3.103 at the conclusion of its discussion, in subsection 19.101(c), of "providing assistance to the appellant".

In his reconsideration motion, however, the Secretary argues that the Court's position conflicts with VA's adjudication and appeals process as "envisioned by parts 3 and 19 of title 38" of the Code of Federal Regulations. Mot. for Recons. at 4. The Secretary asserts that the portion of chapter 3 dealing with "administrative provisions", of which section 3.103 is a part, applies to the originating agencies—the regional offices—but not to the BVA. *Id.* at

5. Rather, the Secretary asserts, the only portions of chapter 3 applicable to the BVA are the "benefits provisions". *Ibid.*

This argument is unpersuasive. First, the cross-reference in subsection 19.101(c) to section 3.103 demonstrates that VA itself has adopted a contrary position. Moreover, the plain language of the statutory and regulatory provisions at issue demonstrates that Congress and VA have "envisioned" a Board of Veterans' Appeals bound by the regulations that bind the entire Department.

The Secretary also posits in support of his argument that the references in chapter 3 to "claimants" as contrasted with "appellants", to which reference is made more predominantly in chapter 19, demonstrate the exclusion of VA's subsection 3.103(c)(2) responsibilities from the obligations imposed on the BVA. Mot. for Recons. at 5–6. However, subparagraph (1) of section 3.103(c), which discusses the right to a hearing, strongly suggests that this distinction is not a viable way to distinguish the duties of the BVA from those of the remainder of the Department. That section provides, in pertinent part:

> Hearings in connection with proposed adverse actions **and appeals** shall be held before VA personnel having original determinative authority who did not participate in the proposed action **or the decision being appealed.**

38 C.F.R. § 3.103(c)(1) (1991) (emphasis added). The provision indicates that, although parties whose claims are before a regional office are predominantly labelled in the Code of Federal Regulations as "claimants" and parties before the BVA are predominantly labelled as "appellants", both sets of parties fall within the purview of section 3.103(c) since "adverse actions" involving "claimants", and "appeals" involving "appellants" are both encompassed in the regulation. (It should be noted that similar language in the M21–1 Adjudication Procedure Manual makes clear that the phrase "original determinative authority" in subsection 3.103(c)(1) refers to VA personnel authorized to preside over hearings, "acting as a hearing agency for the BVA",

conducted locally for claimants who choose not to make an appearance before the Board in Washington, D.C., or await the arrival of a travelling panel of the Board, *see* VA Adjudication Procedure Manual, M21–1, § 18.17a(1), d; the phrase does not imply that section 3.103(c)(1) deals only with hearings concerning initial claims made to the VA regional office.)

Indeed, VA's own Adjudication Procedure Manual, M21–1, deflates the Secretary's argument about the relevance of the labels "claimant" and "appellant" in the Code of Federal Regulations to the division of responsibility within the Department. Chapter 18 of the Manual is entitled "Appeals". Section 18.17 is entitled "Hearings, General". The section begins with paragraph (a), which states that the "claimant" in an **appealed case** may have a hearing before the BVA in Washington or may make an appearance at the regional office "prior to the submission to the BVA". Here, the Department is clearly using "claimant" in discussing an appealed case.

Additional support for the Court's interpretation is found in the M21–1 Manual section 18.18, entitled "Conduct of Hearings". It states in subparagraph (1) of paragraph (a), in pertinent part: "The due process requirements stated in [38 C.F.R. 3.103] are for application throughout the adjudicative process." (Bracketed portion not added.) The guideline does not exclude any part of the regulation from application by the BVA. Moreover, paragraph (c) of that section of the guideline, discussing the nonadversarial and "Ex Parte" nature of hearings on appeal, explicitly applies section 3.103(c)(2), stating: "Suggestions to the claimant as to submission of evidence which the claimant may have overlooked and which would be of advantage to the claimant's position should be made." Because this paragraph has been included in the Manual since at least March 18, 1983, it may reasonably be considered a more consistent VA interpretation of the regulation than that provided by the Secretary in his arguments in this case.

■ Accordingly, the Court's conclusion that subsection 3.103(c)(2) applies to the

BVA not only derives from the plain language of the statutory and regulatory provisions involved, but is buttressed by VA's own internal guidelines which contradict the position the Secretary has taken here. For these reasons, the Court continues to hold that, under 38 C.F.R. § 3.103(c)(2), the BVA was obliged to have fully explained to the veteran that his exposure to the sun during service, his later development of basal-cell carcinoma, and his physician's statement about his sun-damaged skin raised the issue of direct service connection for his illness, and to have suggested to him the submission of additional evidence he may have overlooked that would have helped his case. *Douglas I*, 2 Vet.App. at 110.

### C. Application of 38 U.S.C. § 7722(c)

In *Douglas I*, the Court held that 38 U.S.C. § 241(2) (reenacted in § 7722(c)) required the Board to provide in this case "full information ... regarding all benefits and services to which [the veteran] may be entitled under laws administered by [VA]". The obligations set forth in that provision were held to require the Board to have apprised the veteran of his potential entitlement to service-connected disability compensation for basal-cell carcinoma caused by excessive exposure to the sun during service. On August 6, 1991, Congress reenacted 38 U.S.C. § 241(2) in section 7722(c). P.L. No. 102–83, § 2(b), 105 Stat. 378, 400 (1991). When a "law or regulation changes after a claim has been filed or reopened but before the administrative or judicial appeal process has been concluded, the version most favorable to appellant" generally applies. *See Karnas v. Derwinski*, 1 Vet.App. 308, 313 (1991). Because the language contained in paragraph (c) of section 7722 is nearly identical to that of former section 241(2) and because application of the new provision—section 7722—is no less favorable to the appellant than application of the old, the new provision governs in this case.

38 U.S.C. § 7722(c) provides, in pertinent part:

> The Secretary shall distribute full information to eligible veterans and eligible dependents regarding all benefits and services to which they may be entitled under laws administered by the Department and may, to the extent feasible, distribute information on other governmental programs (including manpower and training programs) which the Secretary determines would be beneficial to veterans.

Relying on the language of the statutory provision and *Akles v. Derwinski*, 1 Vet. App. 118, 121 (1991), the Court held in *Douglas I* that, because the BVA was confronted with evidence in this case that raised the issue of entitlement to direct service connection for the veteran's basal-cell carcinoma, the Board was required under section 7722(c) to inform the veteran that the legal issue of direct service connection was presented and that its development could entitle him to disability compensation. *Douglas I*, 2 Vet.App. at 109.

The Secretary argues that this case is distinguishable from *Akles*, and that, therefore, the obligations of section 7722(c) should not be imposed on the BVA here. Mot. for Recons. at 8. More specifically, he argues that the Court found former section 241(2) applicable in *Akles* only because VA's M21–1 Manual requires that a regional office infer from a claim for disability compensation the issue of entitlement to special monthly compensation. Absent such a requirement in that Manual, contends the Secretary, the BVA is not required to infer issues from the record before it, unless the veteran "sought benefit information from the outreach program" or "was unaware of how to present a claim for benefits". Mot. for Recons. at 8.

The Court is unpersuaded by the Secretary's attempt to distinguish *Akles*. Indeed, *Akles* is controlling in the evaluation of the BVA's obligations in this case. There, the Court found the requirements of former section 241(2) applicable to the BVA because the actions it required were (and continue to be under section 7722(c)) "in keeping" with the "essence" of VA's nonadversarial system and because requiring veterans to develop expertise in the laws

and regulations would be contradictory to that system. *Akles,* 1 Vet.App. at 121. The Court also discussed the BVA's statutory duty, under section 5107(a), to assist the veteran.

The existence of the guideline concerning special monthly compensation simply provided an *additional* reason that VA should have considered the veteran for special monthly compensation in *Akles.* The Court expressly stated that "[h]ere, the failure by the VA to consider the veteran for special monthly compensation *is even more grievous*" because of the Manual provision requiring that VA infer a claim for special monthly compensation. *Ibid.*

The Secretary also argues that the obligations of section 7722 do not apply generally to the BVA. Mot. for Recons. at 9. Again, we remind the Secretary that the BVA, as a component of VA and as an entity under the authority of the Secretary, is bound by statute and regulation to adhere to VA laws and regulations. *See* 38 U.S.C. § 7104(c); 38 C.F.R. § 19.103. The title of section 7722, "Outreach services", does not connote a separate branch of VA, alone responsible for carrying out the mandates of the provision. Instead, it imposes duties on the Secretary generally to effectuate the purpose of the subchapter. Indeed, section 7722 previously has been held by the Court to require of VA, to the extent feasible, individualized actions that comport with the provision's mandates. *See Morris v. Derwinski,* 1 Vet.App. 260, 264–65 (1991); *Littke v. Derwinski,* 1 Vet. App. 90, 92 (1990). The BVA, having been presented with the question of direct service connection by the veteran's service representative, certainly could feasibly have distributed information to the veteran on that issue.

D.  Application of 38 C.F.R. § 3.311b

■ We do, however, find the last of the Secretary's contentions telling. In considering in *Douglas I* whether the BVA applied the proper standard in the evaluation of the veteran's radiation claim, the Court relied on the holding in *Sawyer v. Derwinski,* 1 Vet.App. 130, 135 (1991), that 38 C.F.R. § 3.311b(c)(1)(ii) requires that the

adjudicators, including the BVA, evaluating a claim under regulation section 3.311b may reject the claim only if they find that there is "no reasonable possibility" that the veteran's carcinoma resulted from exposure to ionizing radiation. *Douglas I,* 2 Vet.App. at 111. As in *Sawyer,* the Court held that the BVA's failure to apply that standard was prejudicial error. *Ibid.*

The Secretary has persuaded us that, notwithstanding the Court's holding in *Sawyer,* paragraph (c)(1)(ii) does not provide the standard for the BVA's adjudication of claims for entitlement to service-connected disability compensation based on exposure to ionizing radiation. Instead, paragraph (c) applies only to a determination which the Chief Benefits Director is required to make as a prelude to the formal adjudication of a claim covered by section 3.311b. As the Secretary points out, the BVA's treatment of the issue is governed by paragraph (f), which provides, in pertinent part:

The determination of service connection will be made under the generally applicable provisions of this part, giving due consideration to all evidence of record, including any opinion provided by the Chief Medical Director or an outside consultant, and to the evaluations published pursuant to § 1.17 of this title.

38 C.F.R. § 3.311b(f) (1991). Only paragraph (f) addresses explicitly the determination of service connection—made by the regional offices and the BVA—in radiation claims filed under section 3.311b. Hence, we agree with the Secretary that the BVA must adhere to the more traditional standard set forth in paragraph (f) and need not apply the specific "no reasonable possibility" standard imposed on the Chief Benefits Director in paragraph (c)(1)(ii). Of course, the Chief Benefits Director is still required to apply the standard set forth in paragraph (c) and a failure to do so would necessitate a remand by the Board for that purpose. *See* 38 C.F.R. § 19.182(a) (reformulated in 57 Fed.Reg. 4,105 (1992) (to be codified at 38 C.F.R. § 19.9)) (remand to agency of original jurisdiction required

when BVA discovers procedural defect during course of review).

### III.

In view of the foregoing discussion and after consideration of the Secretary's motion for review en banc, that motion is granted, and the Court en banc has reconsidered the panel opinion. The Court, en banc, reaffirms the panel's original opinion in *Douglas I* with the exception of part II.E. thereof, 2 Vet.App. at 110–11, which is vacated and superseded by the holding in part II.D., above. The Secretary's motion for panel reconsideration is denied as moot.

*It is so Ordered.*