John H. DUNN, Appellant,

v.

Anthony J. PRINCIPI, Acting Secretary of Veterans Affairs, Appellee.

No. 91–541.

United States Court of Veterans Appeals.

Nov. 27, 1992.

Before STEINBERG, Associate Judge.

## MEMORANDUM DECISION

STEINBERG, Associate Judge:

The appellant, Vietnam veteran John H. Dunn, appeals from a November 29, 1990, decision of the Board of Veterans' Appeals (BVA or Board) denying entitlement to service connection for arthritis of the spine, to an increased rating for residuals of a gunshot wound of the lower right extremity, currently rated as 20% disabling, and to an increased rating for residuals of a gunshot wound of the lower left extremity, currently rated as 10% disabling. *John H. Dunn,* BVA 90–40695 (Nov. 29, 1990). The Secretary of Veterans Affairs (Secretary) has moved for summary affirmance. Summary disposition is appropriate because the case is one "of relative simplicity" and the outcome is controlled by the Court's prece-

dents and is "not reasonably debatable". *Frankel v. Derwinski*, 1 Vet.App. 23, 25–26 (1990). For the reasons set forth below, the Secretary's motion will be denied and the Board's decision will be vacated and the matter remanded for readjudication of the appellant's claims.

## I. BACKGROUND

The veteran served on active duty in the United States Army from September 1967 to December 1974. R. at 1, 68. In June 1968, he received gunshot wounds to both legs. R. at 7. Although service medical records are incomplete, both tibias were fractured by bullets and his right ankle apparently required immediate surgery to remove a bullet. R. at 9, 10, 15, 19. Both legs incurred malunion of the lower tibia and fibula, resulting in a "fair degree of disability" according to an April 1974 report by an Army physician. R. at 15. In March 1974, the veteran suffered an additional leg injury when a chain snapped and lacerated his left leg. R. at 14. According to a June 1974 Army orthopedic report, the veteran suffered pain in his left leg and limited range of motion in his left knee, causing him to limp and rendering him unable to place weight on his left leg. R. at 20. According to an October 1974 medical profile, he was restricted to standing no more than four hours per day. R. at 24. An October 1974 Army orthopedic report gave a diagnosis of "Osteoporosis of [right] foot & lower leg from old [gunshot wound fracture] which has healed [with] malunion & early posttraumatic ankle arthritis. Recommend ... disability settlement at time of separation [with] future [Veterans' Administration (now Department of Veterans Affairs) (VA)] benefits". R. at 26. There is no separation examination report in the record on appeal (ROA).

According to the record of a February 1975 VA orthopedic examination, the veteran suffered pain and swelling in both legs continuously from approximately 1969. R. at 32. The examiner found the scars on both legs to be healed, and noted a full range of motion in the right leg, although he did not describe the range of motion of the left leg. He stated that the veteran walked without a limp. *Ibid.* In a March 1975 rating decision, the VA Regional Office (RO) granted service connection for residuals, gunshot wound, of each lower extremity, with fractures of tibia and fibula, rated as 20% disabling in the right leg and 10% disabling in the left leg, effective December 10, 1974, the day after discharge. R. at 35. According to a May 1976 physical examination conducted by the Louisiana Department of Veterans Affairs, the veteran suffered from "severe osteoporosis—cause unknown". R. at 36. In a June 1976 letter supporting a request for a higher rating, the veteran stated that he had been told by a physician that his osteoporosis was softening the bones in his legs and back. R. at 38. A March 1976 VA medical certificate gave a diagnosis of osteoporosis, secondary to gunshot wound. R. at 43. However, a June 24, 1976, VA medical evaluation interpreted X rays as showing no osteoporosis (R. at 44); in a letter dated the same day as that evaluation, the veteran challenged the validity of the examination, stating both that the physician had failed to clinically examine his legs and that the physician had laughed at the prior VA diagnosis of osteoporosis. R. at 41. In a July 1976 decision, the VARO denied increased ratings for the veteran's disabilities. R. at 46.

In February 1988 the veteran again requested increased ratings, this time submitting a December 1988 statement from the Alexandria, Louisiana, VA Medical Center which diagnosed "generalized osteoporosis of knee and [lumbosacral] spine". R. at 53–58. A November 1988 VA radiologic report confirmed generalized osteoporosis of the right ankle, both knees, and the spine, and stated that the changes in the spine were "compatible with early rheumatoid arthritis". R. at 65. An April 1989 VA physical examination gave a diagnosis of "[c]hronic low back pain, probably due to mild degenerative joint disease"; however, it did not discuss a March 1989 VA radiologic report which had noted the presence of osteoporosis in the lumbosacral spine. R. at 75, 76.

In a June 1989 decision, the VARO denied service connection for osteoporosis and degenerative changes of the lumbosacral spine, and further denied increased ratings for the gunshot wounds of the legs. R. at 83. After the RO's September 1989 confirmation of that decision, the veteran filed an appeal with the BVA. R. at 97, 99. At an October 1989 personal hearing, he stated that he suffered pain, swelling, and limited motion in his legs (R. at 102–04) and that he limped due to pain and the shortening of one leg (R. at 111–12). A December 1989 VA orthopedic evaluation performed at the request of the hearing board found only "slight shortening" of the right leg and full range of motion in both ankles and knees. R. at 125–26. Although the examiner recorded an impression of "osteoporosis of the lumbar spine on basis of x-ray reports", it appears that additional X rays were taken prior to the final diagnosis. R. at 126–27. The examiner gave a final diagnosis of "chronic lumbosacral strain", non-disabling, and noted: "Veteran failed to complain of back until examiner asked about his back." R. at 127. In its November 29, 1990, decision, the BVA concluded that the appellant's arthritis of the spine had not been incurred in or aggravated during service, and further found that the evidence of record did not satisfy the schedular criteria for increased ratings for residuals of gunshot wounds to the lower extremities.

## II. ANALYSIS

### A. Claims for Increased Ratings for Lower Extremities

■ As to the lower extremities, the BVA erred in failing to analyze the evidence in light of 38 C.F.R. § 4.40 (1991), the regulation that requires the Board to regard as "seriously disabled" any part of the musculoskeletal system that becomes painful on use. Under that regulation, "the VA has a duty to determine functional loss which includes evaluating a veteran's pain". *Ferraro v. Derwinski*, 1 Vet.App. 326, 330 (1991); *see Schafrath v. Derwinski*, 1 Vet.App. 589, 591–92 (1991); *Hatlestad v. Derwinski*, 1 Vet.App. 164, 167

(1991). Although the ROA contains numerous medical reports documenting a history of pain in the appellant's legs and ankles dating from 1968 to 1988 (R. at 20, 41, 58, 69) as well as the appellant's sworn testimony that he suffered pain in his lower extremities (R. at 102, 104), in its decision the BVA failed to address the question of pain. Therefore, remand is required to allow the Board to discuss, in the context of section 4.40, all of the evidence that addresses the veteran's functional loss due to pain.

■ The Board is required to base its decisions on "all evidence and material of record", 38 U.S.C. § 7104(a) (formerly § 4004), and to provide a "written statement of the Board's findings and conclusions, and the reasons or bases for those findings and conclusions, on all material issues of fact and law presented on the record", 38 U.S.C. § 7104(d)(1) (formerly § 4004). *See Douglas v. Derwinski*, 2 Vet. App. 435, 438–39 (1992) (en banc); *Gilbert v. Derwinski*, 1 Vet.App. 49, 56–57 (1990). Pursuant to these statutory requirements, the Board must "account for the evidence which it finds to be persuasive or unpersuasive", and provide reasons or bases for rejecting evidence submitted by or on behalf of the claimant. *Gilbert*, 1 Vet.App. at 57, 59. A November 1988 VA radiologic examination gave a diagnosis of generalized osteoporosis of both knees and the right ankle; however, the Board did not discuss this finding in light of the October 1974 in-service diagnosis of osteoporosis of the right foot and lower leg due to gunshot wound. R. at 65, 26. Although the record does contain an intervening 1976 VA medical record which stated "no osteoporosis", the Board failed to discuss whether the appellant suffers from osteoporosis of the lower extremities, ratable under 38 C.F.R. § 4.71a, Diagnostic Code 5013 (1991), and, if so, whether such osteoporosis is the same disease entity as that diagnosed in service. The Board will be required to address these questions on remand.

### B. Service Connection for Arthritis of the Spine

■ In its decision, the BVA stated: "Clinical evidence of degenerative changes

of the lumbar spine, variously classified as osteoporosis and early rheumatoid arthritis, was initially reported on an [sic] VA X-ray in November 1988." *Dunn*, BVA 90–40695, at 4. In his brief, the appellant contends that the wounds to his lower extremities caused osteoporosis (or osteoarthritis or rheumatoid arthritis) to spread to his lower back and that, therefore, his back disabilities are secondary to his service-connected disabilities. Br. at 10. Although the ROA contains 1988 and 1989 diagnoses of osteoporosis of the spine (R. at 53, 55, 65), and a 1989 diagnosis of "chronic lower back pain, probably due to degenerative joint disease" (R. at 75), the ROA contains no evidence linking the appellant's back disabilities to his service-connected leg disabilities. *See Rabideau v. Derwinski*, 2 Vet.App. 141, 143–44 (1992) (requirement of nexus between claimed disability and service-connected disability). This Court reviews BVA factfinding under a "clearly erroneous" standard; "if there is a 'plausible' basis in the record for the factual determinations of the BVA, ... we cannot overturn them". *Gilbert*, 1 Vet. App. at 53; 38 U.S.C. § 7261(a)(4) (formerly § 4061). The veteran has not submitted any evidence in support of his claim that his back disability was incurred in or aggravated in service, or that it is secondary to injuries incurred in service; his own conjecture is not competent evidence. *See Espiritu v. Derwinski*, 2 Vet.App. 492, 494 (1992) (lay witness not competent to offer evidence that requires medical knowledge). Consequently, the Court holds that the BVA's findings of fact concerning the claimed back disability have a plausible basis in the record and, hence, are not subject to reversal as being clearly erroneous.

## III. CONCLUSION

Upon consideration of the record and the submissions of the parties, the Court holds that the appellant has not demonstrated that the BVA committed error in denying service connection for arthritis of the back, in its findings of fact, conclusions of law, procedural processes, consideration of the benefit-of-the-doubt rule, or articulation of reasons or bases, that would warrant remand or reversal under 38 U.S.C. §§ 7252, 5107(b) (formerly §§ 4052, 3007), 7104(d)(1), 7261 and the analysis in *Gilbert*, 1 Vet. App. at 49. The Court affirms the November 29, 1990, BVA decision insofar as it denied service connection for arthritis of the back.

However, the Court vacates the BVA decision insofar as it denied increased ratings for residuals of gunshot wounds to both lower extremities and remands the matter to the Board for prompt readjudication of those claims in accordance with this decision, on the basis of all evidence and material of record and applicable provisions of law and regulation, and issuance of a new decision supported by an adequate statement of reasons or bases. *See* 38 U.S.C. § 7104(a), (d)(1); *Fletcher v. Derwinski*, 1 Vet.App. 394, 397 (1991). On remand, the appellant will be free to submit additional evidence and argument. *See Quarles v. Derwinski*, 3 Vet.App. 129 (1992). The Court retains jurisdiction. The Secretary shall file with the Clerk (as well as serve upon the appellant) a copy of any Board decision on remand. Within 14 days after any such final decision, the appellant shall notify the Clerk whether he desires to seek further review by the Court.

AFFIRMED IN PART AND VACATED AND REMANDED IN PART.